Thank you, Your Honor. May it please the Court, Parker Ryder Longmate of Skadden Arps for the Capital Group Defendant's Appellants. I'd like to reserve three minutes for rebuttal and I'll watch the clock. I want to start by laying out a roadmap for how I think the Court should approach the case. The briefs raise a number of issues and the possibility of conflict with other circuits, but I think there's a straightforward path here. First, I want to address consent. Second, whether the effective vindication doctrine bars individualized arbitration. And third, delegation to the arbitrator, which I think is the easiest way the Court could proceed here, because the plan plainly delegates Pover's effective vindication argument. Let's start with the third one. You waved, you didn't argue it below. I assume you're, and I understood that your argument was, yeah, but it's a legal issue so we can waive waiver. Their argument was, yeah, but Pover doesn't understand things. Your response was, doesn't matter, the plan understands things. Platt just basically adopted your argument on that, but so you think we should waive waiver because her individualized offenses to consent are gone because of Platt? I think a couple reasons, Your Honor. So first of all, this is a pure question of law. It's also an argument. Yeah, it's a pure question of law. If actual questions about consent don't play into it and you don't think they do because Platt decides that. That's right, Your Honor. And also I think there is a change in law in the sense of Choctaw Nation, which from this Court made clear that enforceability challenges include the effective vindication issue, and that didn't happen until after the motion to compel. I think it's just a very clean way to resolve this case because it's a... But isn't it also really inefficient? I don't know that it is inefficient, Your Honor, because I think that no other court of appeals has addressed this question in this context that would be making useful law, and this issue just would get sent to... Wait a minute. What useful law would we be making? Well, I think it would be making clear that the effective vindication argument applies in this context and it gets delegated along with other issues of arbitrability to the arbitrator. So just saying that effective vindication is a threshold question that can be sent to the arbitrator, that's the development? Well, I think in this context it's a useful development because other courts of appeals have considered the effective vindication argument in the context of the defined contribution plans and they haven't looked at a delegation question. I don't understand the argument to have been made in any of those other cases. I think it is... My efficiency point is if we sent that to arbitration, we said, yes, this should have gone to arbitration as this was written on all threshold questions, including effective vindication, goes down to the arbitrator and they make a decision and that can be appealed, and that decision has been made by the district court at this point. The record is here, so why don't we just decide it? I mean, applying waiver or not is discretionary for us, so I think it looks pretty legal to me. It looks like a legal question, but I don't understand why we would buy the parties, I don't know how much longer in litigation, sending this down to come back up on the same question that's here right now. Well, I think, Your Honor, to the extent that the court thinks it's a difficult question to resolve effective vindication, this would be an easy way to resolve the case. That said, I do have arguments to make about effective vindication and why we think the district court's conclusion was wrong here and why, in fact, POBR cannot bring these claims seeking relief essentially for other defined... So let's get to the merits of the effective vindication doctrine. I think you'd have to address the elephant in the room, which is this recent case of Platt, which the panel is now bound by. That case applied the effective vindication doctrine, right? Even assuming that the plan is the consenting party. It did, Your Honor, but I want to start by making two points, which then maybe we can explore. The first is that's a health plan context, that's not a defined contribution plan context, and what we know from all the cases in the Supreme Court's cases, we have to look at the nature of the particular plan. You know, defined benefit plans are different from defined contribution plans, for example, and also the what... But the analysis and logic of Platt apply, so you'd have to distinguish Platt beyond just that it's a different plan. Well, Your Honor, I don't think it does, and that's where I think the different nature of the plan comes into play. I think what Platt understood the bar there to be was on representative actions and what we have called in the brief in the principal agent sense, where the plan participant is representing both the plan participant's interest, but also the plan as to the harm... Yeah, so Platt didn't really address your argument, which I found somewhat compelling, that if you read it in context, representative, the plan means representative in a sense of class or collective action. It doesn't mean it in this other sense that Viking Cruz is talking about. Platt doesn't address that. It does, though, just kind of... Platt's analysis is very, very cursory, but it does resolve it and say effective indication applies, but what do we do with that since Platt didn't address your argument? Is that still available to us to look at, or does Platt foreclose it? No, Your Honor. I think that Platt does not foreclose the argument. I think, as you said, it's a very cursory analysis. It doesn't address a waiver of representative claims where... Does it matter what the... I mean, Platt doesn't talk about what the provisions look like. We know what your provisions look like because it's talked about in the briefs. As I recall, the Platt decision doesn't talk about that. I mean, we can go, I suppose, look in the Platt record and figure out what those provisions look like. Does it matter what they look like, or does it matter what's on the face of the opinion for purposes of binding us? Your Honor, I think it matters what's on the face of the opinion, but I also think if you were to go look at the record, and it's at 3 ER 306 and document 12 in the Platt excerpts of records... Platt's records. Platt's records. The case number is 23-557-57... Excuse me, 37. The waiver there said arbitration claims must be brought in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. I think individual capacity makes clear you can't have a representative capacity. The way that Platt, this Court's case law, Supreme Court case law talk about representative capacity in defined contribution plan participant claims is you... In that language, it's different than in your plan document, you're saying? It's different than in ours, and I think what's important about ours is you have the term, the defined term is class action waiver, and it's putting together the terms class, collective, and representative. These words are known by the company they keep. It's really clear that the goal is to have mandatory individual arbitration for... All right, so that's what really... Maybe I didn't ask my question well, but that's what I was really getting to in terms of Platt, right? We see the analysis, we don't see the distinction really in the facts and what was argued and what wasn't argued. So the bottom line is that in order for the effective indication doctrine to apply in Platt, but yet not in this case, you'll have to convince us that there is a difference that really matters, and you're saying that the representative language in the waivers are different, right? Is that how you understand your argument? Okay, so what's the effect of that? So I agree, Your Honor, I think the language is different and the effect... Is there the ability to seek plan-wide relief here in arbitration? Well, I want to pause on plan-wide relief for just a moment because I think that turns on the nature of the underlying claims, but I think the representative waiver in Platt, as I understand the opinion, as Judge Van Dyke alluded to, it's a very cursory analysis, is a bar on any principal agent representation even. So Platt couldn't even bring the claim, and I understand what it says in the Platt opinion, and this is at, I believe, at page 19 of the Slip Opinion, the representative action waiver there expressly precludes Platt from bringing claims in a representative capacity. We're not even getting to relief. So the other circuit court decisions that Platt cites as supporting, they understood those to be the class action waiver type of representative waiver, so they had to look at the kinds of relief. So really, it's like a bar on bringing any type of claim, and that was the problem because the 502A2 claim, as this Court's precedent holds, and Platt again makes clear, is representative at least insofar as it's remedying the injury to the individual participant in the plan. So I understand Platt's language about a representative waiver just to refer to the first sense in the Viking River Cruises of can't bring a claim that is even representative of the plan. On the plan-wide relief point, which goes on to discuss plan-wide relief, I think, Your Honor, it depends on the type of claim at issue because we know, if you take the defined benefit context, for example, we know you may have plan-wide relief because that's the nature of the harm that has to occur even to get individualized relief. But if you look at defined contribution plans, the Supreme Court precedent also makes clear, each participant in those plans has his or her own account. And what they're entitled to is the value of that account at the time it gets paid out. So it's a different sense of harm that occurs as well. And you could have plan-wide relief in the defined benefit context. I'll give you an example, and I'll give you the example of the... Let me ask you a question about that, though. So let's say I put a waiver to the side, waiving waiver to the side, and say I'm following you and agreeing with you all the way to the that you can pursue, that this language does not bar representative actions in the sense of representing another entity, a key TAM or a securities derivative-type suit, right? And you're saying it doesn't bar that kind, and that's what this is. In a key TAM action, you're not somehow limited to getting the money for the piece of the guardrail that skewered your cousin or something like that. And in a securities derivative action, you're not limited to getting the money that you lost. If you prevail and you get all the way through, you get the whole enchilada, money too, not just injunctive relief, et cetera. So I'm following your argument all the way until you just seem to say in your briefing, yeah, but we don't, you don't get the, they can sue on behalf of the plan, but they only get the money limit. And so it seems to me the force of your argument would mean that you would go to arbitration and you would be able to get everything, including you would arbitrate the entire amount of money that the plans owed, not just Pover's little tiny slice. So why, I don't follow you as to why you, everything else Pover can ask for on behalf of the plan, but can only ask for, I think her, her slice of the money. So Judge Van Dyke, I want to point you to two places to look for the answer to this and I'm going to describe what they say. So I point to Judge Menasche's dissent. Yeah, that didn't make any sense to me. Okay. The toll decision that he relies on there. Okay. Because the toll decision actually addresses all the different kinds. I don't want to, you don't have a lot of time. Let's assume for a second that I don't find Menasche's, and I think he's great, but... I want to talk about toll from the Supreme Court, which he is relying on. The point about toll from the Supreme Court is... I mean, he ultimately says something about like, he does, like, he treats it like they don't have standing to, to get more than their slice, I think, with Judge Menasche. And that, that's just, if that was true, you wouldn't have standing to get the entire amount for the key TAM, or you wouldn't have standing to get, you get, you know, you have to have standing to get in, but then you're standing in the shoes of the entity that you're representing. Doesn't make any sense to me. I think that's the question, whether you can stand in the shoes of the entity for those purposes. And what toll makes clear is that plan participants possess no equitable, equitable or property interests in the plan. It says it's clearly 590 U.S. at 543. Participants have not... Congress has given them the ability, I mean, you have to satisfy standing, you have to have some injury, but Congress has given them, once they stand, have some personal injury, to ask for a bigger chunk. We do that all the time for these representative actions. Judge Van Dyke, I don't think Congress has. I think that's the point. So this is the Supreme Court's opinion in toll, the majority opinion, which says participants have not been legally or contractually appointed to represent the plan. The court actually looks at the analogy to the Key Tam Statute. This is the Vermont Agency of Natural Resources versus United States Sexual Stevens decision, and also looks at other assignment theories, and we'll talk about what that means in a minute, and rejects those as analogies. In those cases, on your Key Tam example, my understanding of the way standing works is that Congress has said, we're going to assign this claim to the relator, and it's a full assignment. You could have an assignment of a contract claim, too. I could buy a contract claim from someone else, and I could pursue it, and that would transfer the standing over. The Supreme Court has said that in the Stevens case, and the Sprint Communications case, as to types of contract and other claims. But the Supreme Court in toll goes through here and rejects these bases, and says, there is no interest that plan participants have. There's nothing like assignment like that. And actually, in fact, goes and looks at the dissent's arguments, Justice Sotomayor writing for dissent, and saying, there are all these bases for standing, because plan participants have an interest. They're like a beneficiary of a trust. They're like a Key Tam relator. And the court just rejects all of these. So we got you down to two minutes. So this all sounds really complicated. I guess, taking this full circle, maybe we should have the, your argument is we should have the arbitrator decide this question as a threshold matter? I do think so, Your Honor. I think that would be the easy way to do it, because I think- Because as I understood Judge Forrest, it was like, it seemed like he was saying, this thing's kind of for sure going to come back. But it's not clear to me now that it will for sure, because maybe the arbitrator would see it the way I'm seeing it. And you would win going to the arbitrator, but then you would lose, because you'd get the, the arbitrator would conclude that the entire, that they can pursue monetary relief on behalf of the entire plan. Well, Your Honor, I think we would make all these arguments that we're making now to the arbitrator. And I also would point out that Trump has passed a decision, which we discussed in the Rule 28 Jailor, because I think it just reinforces you can have only the relief to redress the injury that gives you standing. I'm going to take you over your time, but I promise I'll give you, I'll give you, how many minutes did you want to save? I wanted to save three minutes, Your Honor. Okay, I'll give you your three minutes back. Thank you. In your view, because this part, I'm still not sure I understand your argument, what sort of remedies is the arbitrator empowered to order? So the remedies, I think, would actually be very simple to the one, it would be the same as a court could award- Setting aside the monetary. Aside from monetary. Can the arbitrator order to move over fiduciary? They could, Your Honor. And I think a lot of the briefs go back and forth on this point, because that relief would be redressing- About reallocation of the investment choices. That as well, Your Honor, because these- But then that affects everybody else. An arbitration clause here says that it's supposed to be individual only. Well, so Your Honor, it's individualized- I'm a member of the plan and somebody else is removing a fiduciary. Maybe I like that fiduciary. Maybe I like the investment choices. You're saying in individual arbitration, the arbitrator could order the scope of equitable reliefs that would affect everybody else? It would- So Trump versus Costa also makes this point clear. You could have incidental effects on parties that are not before the court when you have equitable relief. And that's okay. But the key point from both an Article III standpoint and traditional principles of equity point is that the relief is actually remedying the harm of the particular plaintiff before the court. Okay. I understand your argument. Thank you. I'll give you the three minutes back. Thank you, Your Honor. Good morning, Your Honors. Charles Field and Sharon Kim for the Appley. Kathy Pogler. This is an ERISA case in which a defined contribution plan is seeking plan-wide monetary and other remedial relief for breach of fiduciary duty. The appellants want to enforce an arbitration agreement that limits that relief to Ms. Pogler's individual losses only and all but eliminates all types of other plan-wide remedial relief. This directly contradicts what's in ERISA and it's contradictory to the applicable case law, including what this circuit just decided last week in Platt versus Sodexo. And therefore, we would ask this court to affirm the district court's decision. I want to address three points today, three main points. And that is appropriate relief under Section 409 means exactly what it says. And that means relief to the plan for all losses caused by the breach, relief to the plan for the profit. I'm going to see if I can, and my colleagues may have different, but the things I'm struggling with or focus on is first of all, the waiver issue, because that Platt did address that too. And it seemed to me your response before Platt to their argument was on the delegation issue to the delegating to the arbitrator was that argument wasn't made below. And then Platt comes out and he said that argument wasn't made below and there is individualized issues because we don't know, you know, Pogler's not a sophisticated party. Platt came out and I think, and I'm curious if you agree with this, that kind of killed your second part of that because it says, what matters is looking at the plan, not looking at Pogler and I guess I assume Platt in that case. So what you have left is waiver. Is that your view of the lay of the land on the delegation waiver issue or is there something I'm missing there? No, I think that's right because what we have in the arbitration provision are two clauses that appear to be at war with each other. So is there, you know, so their argument is, it was and it continues to be, yeah, we may have waived it, but there's an exception for legal issues and this is a purely legal issue. And if Platt has foreclosed your ability to make factual arguments about that, would you agree that it's a purely legal issue and so we would have discretion to waive waiver? Well, yes, I would agree you would have discretion, but what I don't agree with is that it's a purely legal issue and there are factual issues. What factual issues are left after Platt? Factual issues are, for example, if it was between the plan and the fiduciaries, is the plan considered to be sophisticated? And then we also have the factual issue of these two provisions, the one that incorporates by reference the AAA rules, which they're relying on to say clear and unmistakable evidence. And we're relying on the waiver, which says that this is pretty direct language that says that they have waived this right. And that if they waive this right, then this matter goes to a court of competent jurisdiction and not to an arbitrator. Okay. So moving on from waiver, the next big issue for me, at least, is if we were to decide this, or I suppose if an arbitrator were to decide this, their argument is, it's a funny case because they basically agree 90% with you that, yeah, the majority of things can be litigated before an arbitrator. I think you heard the answer to Judge Wynn that basically everything except money, I think was the answer, that everything except money. And I don't know if you understood what I was saying to your colleague on our side, but I understand their argument and I think it makes a lot of sense that these terms are different and representative should not be read as the key TAM type representative. What I don't understand about their argument is if it goes to the arbitrator or to us or to a federal court, I don't understand why their provisions would allow them to be able to get non-monetary relief in a representative capacity for the plan, but not be able to get monetary relief. So it seems like they could win by this going to an arbitrator, but lose by you guys being able to make the, we get the whole pie monetarily considered before the arbitrator. Is that, what am I missing there as far as, I understand their argument is proving too much for them, is maybe that's. Well, our position is we don't see this going to an arbitrator because if this provision is deemed to be unenforceable. But if it went to an arbitrator, let's assume for a second, let's say it goes to an arbitrator because we determine that no, this can go to, well, if it went to an arbitrator because we determined that no, this is a, the word representative, the bar on representative actions is only a bar on class type actions where you're representing like the plan. I don't understand why they would not be able, the arbitrator would not be able to consider monetary, the full injuries to the plan because they're standing in the shoes of the plan at that point. And just like a person who's standing in the shoes of the company in a derivative securities action can ask for all the damages to the company, not just the little piece that involves the shares that they hold. Why wouldn't they be able to ask for all of the money? Why wouldn't you guys be able to ask for, why wouldn't Pover be able to ask for, since she's standing in the shoes of the plan, be able to ask for all the money on behalf of the plan? Because the arbitration provision limits the arbitration to an individual arbitration. So if Ms. Pover goes into arbitration, the only thing that she can ask for are claims that are individual to herself. She wouldn't be allowed to ask for a representative claim on behalf of the plan because it would violate the arbitration agreement. So that's the money part, you know, right? And I tend to agree with you. It says individual, so I don't know how the arbitrator could order that other people's monetary losses be funded too. What about equitable relief? Because your opposing counsel says that the full panoply of equitable relief removal of the fiduciary reinvestment allocations, all of that the arbitrator can order, and that would be incidental effects only on the other plan participants. What's your response to that? Well, my response, I heard your question earlier, and I don't see how an arbitrator could award plan-wide relief that reformed the investment lineup in the plan to change this lineup, change this fund, take this one out, and I don't see how that they could also remove the fiduciaries except on a representative basis. I'm struggling to understand that as well because the arbitrator's powers arises out of whatever it is that the parties agreed to give her, right? So I don't know how she could take action that affects the plan in that fashion. Well, we don't see that either, and the idea that this would affect the others only incidentally, that has problems with it too, and the problems is that if you bring in an individual arbitration, the plan is not a party to that case. It's not a party to the arbitration. It would be individual. So the plan would not be able to confirm the arbitration award because it's not a party. But the argument assumes that she gets to stand in the shoes of the plan. Well, that's right. That's right, but let's assume, let's assume a worst-case scenario where Ms. Pover gets gravely ill, she leaves the country, she dies, or she just changes her mind. The plan then is out of luck because it couldn't enforce that award. It would have to go out and find another participant to bring a claim so that it could recover the full relief that it's entitled to under Section 409. Can I make sure I understand? A lot of their argument is based on the fact that representative can have two different meanings, and representative here does not mean class. It means representative in the sense of like a key tam or a private attorney general type, that kind of, okay. And as I understand it, the other language there is individual because it says you can dispute arbitration on an individual basis only. Is your position that if it just, that if this thing said that you can bring any dispute in arbitration on an individual basis only, but did not go further and say, and not on a class, collective, or representative basis, that you would not be able to bring a, you could not bring one of these claims in arbitration, that the word individual, in other words, does all the work to where that would keep you from being able to stand in the shoes of the plan in an arbitration? Yes. So individual has that, so individual alone, so really the language class, collection, or representative basis is not what does the work for you. It's if you say, as soon as you say you have to arbitrate on an individual basis, you then are foreclosing the ability to bring a claim on behalf of one of these type of claims or a representative action, not in a class sense, but in the sense of a QTAM type. Yes, that's our position, and it's pretty plain. Do you have case law that represents individual arbitration such that you can't bring, because I thought we had cases that said, for instance, where you have to arbitrate, that you could, that you, there are times when PAGA claims, are you familiar with PAGA, that California's attorney, which is a similar type circumstance where you are bringing a representative claim, not in the sense of a class, but on behalf of the attorney general, on behalf of the state of California. I thought we had cases that said you could arbitrate those in arbitration, but maybe I'm... You're talking about Viking River, and the difference between our case and Viking River is that when you bring a PAGA claim, the individual bringing the claim, they have an individual cause of action in their own right. That's the claim that has to be arbitrated. We don't have that here. Ms. Pover is not allowed to bring an individual cause of action. She can only bring a claim for section 409A relief, and 409A relief mentions the plan five times and not once. Does 409A mention relief to an individual or an individual's account? So the idea that she could come forward in it by herself, she cannot under the statute. It's not available to her. Your view, and I'd be curious to hear from the other side as to whether or not the language, just individual alone, forecloses the type of, one of these type of representative actions. Again, not class action, but a representative of, and it's not clear to me that it would because you could, as an individual, bring a claim where you're standing in the shoes of someone, like you could bring it as an individual, bring a key town as an individual, but I guess I'll have to look closer at that. Well, it's just here, if you look at the statute, all right, so you have two statutes. You have 409A, which provides relief to a plan for relief for losses or for profits and other remedial relief. The plan is mentioned five times, and now you have 502A2, which authorizes Ms. Pover to bring this claim and seek appropriate remedies under 409A. So if you look at those together, Ms. Pover is only allowed to bring claims that she could get relief for under 409, and 409A limits relief solely to the plan, nobody else. So she would not be able to bring a claim in her own right as an individual. She has no individual cause of action, and that's the difference, and you see some of these other claims. I'm not sure that the language of the statute is really, I could read, go back and read it carefully as well, it's that clear, but I think there's case law indicating that the right is really for plan-wide relief only, right? Right, the language says I can read the language if you'd like me to read it. Yeah, no, so my question is just whether or not, so if we accept that you have, you can only, because I think that is fixed by case law, that you can only bring one of these claims on behalf of the plan. So I keep thinking to PAGA or KETAM or securities, because you can only bring one of those type of claims. What I'm struggling with is the language in the actual arbitration agreement or the amendment to to the agreement here to the plan terms, which is that says that you can only bring it on an individual basis. Does that mean that you can't bring one of those type of claims? Just the individual language itself, and in your position is that yes, that by saying you can only bring an individual, bring it on an individual basis, that forecloses the ability to bring one of one of those type of representative actions, even assuming that representative later in the text doesn't, it's like a class action or something. Okay, so 502 has three sections, A1, A2, and A3. The A1 claim and the A2 or the A3 claim you could bring as an individual. Those claims you can bring on an individual basis. The A2 claim, which is your breach of fiduciary duty claim, can only be brought on a representative basis with a participant representing the plan. But if they wanted to bring an individual claim for their own relief, then they would have to go to another section other than 502A2. And I think what we have here is Ms. Pover, she's authorized by statute under section 502A2 to bring a claim on behalf of the plan to seek relief for the entire plan. This is not an instance where she has an individual cause of action in her own right, and she's bringing this case and trying to collectively join with other participants. That's not what she's doing here, and the statute wouldn't allow us to do that. Thank you, counsel. Okay. I'm curious to hear your view on whether, you know, if you just pretend out of the language, pretend representative means what you mean, representative, it still does say on an individual basis. And then if it did mean that, could the court or an arbitrator sever the individual basis part out for the reason that you're, for the argument, under the same type of arguments you made, I think, later in your brief as like your second or third tier argument? Yes, I just want to back up Judge Van Dyke and try to explain what representative really means here. Because when she's proceeding on an individual basis, the question is, she is representing the plan, but the question is to what extent. And we say the question is to the, the answer is to the extent of her own injury. That's what gives her standing to sue in the first place. Now remember... So because you have just conceded that when she brings this claim she is representing the plan, our job is to interpret the terms of this contract. We start with the plain language. You just said representative action can mean just representing another entity, which is exactly what this claim is defined to be. So why, why shouldn't we read it that way? So, so Judge Forrest, it's not representing the plan for the entire scope of plan-wide relief to every account. A defined contribution plan participant... The only relief that's available under that provision for this kind of a claim is for such losses to the plan resulting from the breach. There's no reference in that statute to an individualized recovery. It's loss to the plan. So I think your argument is, well, loss to one person is also loss to the plan, but it's not the only loss to the plan. And the statute just talks about the measure of damages is loss to the plan. So Your Honor, the question is what is appropriate relief when the plaintiff is the defined contribution plan participant? Can she stand in the shoes for the plan as to all those losses or just as the losses to her individual account? And we think LaRue makes... Under the statute, she can do it for all of them, right? Do you agree with that? I don't, Your Honor. I would point the court to the Supreme Court's decision and toll 590 U.S. at 542 to 544. Getting back to the plain language again, counsel's directed us to 502A2. A participant or beneficiary can bring with the beneficiary fiduciary for appropriate relief under section 409. And 409 allows the restoration to such plan for any profits. So I don't know that you can just cut away the equitable relief part from the monetary, plan-wide monetary restoration of profits part, which is authorized specifically under 409. A couple points on that. So 502A2 says the Secretary of Labor or a participant or a beneficiary fiduciary can seek appropriate relief under 409. And our point is, the briefs explain, is that appropriate relief may be different for each of those actors. And we know that an equity is flexible this way. Trump v. Costa makes that again. What Trump v. Costa makes very clear is that the relief must be complete relief only to the plaintiff before the court. And Hoover is the plaintiff. So she's proceeding not in a collective class action sense, but just for herself. The question is, how much is appropriate relief that ERISA authorizes? And we think Toll and Trump v. Costa make clear, it can't be more than the relief just to her individual account, although there may be incidental effects beyond that. All right. I think we've got the argument. I want to come back to the plain language. So class, collective, or representative action. If I construe representative the way you want me to, I don't understand what work it's even doing in that sentence. I think as with many terms and contracts, it is a belt and suspenders making clear that there can't be any collective type of arbitration here or a proceeding in court where Pover is representing the interests of other claimants. But I would say, you can't conceive of a 50282 action is only representing the interests of the plan. It has to, for Article III standing reasons, and I think also as LaRue makes clear, also has to be redressing the injury to the particular participant. And the way it works in a defined contribution plan context is that money is going to be recovered for the account and will be available in the plan participant's account. Okay. Can I ask one follow-up? Of course. So you said class, collective, or representative. It's drafters just adding, what else could this be? And that's intuits with me. The question I've got is it says, if you read earlier, it says dispute and arbitration on an individual basis, comma, and not on a class, collective, or representative basis. So do you read those as flip sides of the, so when it says on an individual basis only, is the way that should be interpreted is the opposite of a class, collective, or representative in the sense of collective, representative, or does individual basis only have additional meaning than the negative that follows it? If I understood correctly, Judge Vendetta, I think it's just in the, let's say, class action or collective sense that it's distinct from. So if you imagine that this is a waiver just as to proceeding in court, for example, it would basically be saying, she can't bring a Rule 23 class action like she's tried to bring. What could she get if she's representing only one person? Well, and the reason I ask the question is because I understood your colleague to be saying that individual alone sort of can, even if you ignore the other, does the work because this is not an individual action. It's on behalf of the plan. And so they're reading individual, I think, to mean not on behalf of somebody else. But your view would be that an individual action means the opposite of the way you read, it means is another way of, is the flip side of saying not a class, collective, or representative basis in a sense of representative being another word for class or collective action. So I think we know individual can't bear the meaning. The other side is putting on it from LaRue itself, 552 U.S. at 256, where they're talking about, in the circumstances of that case, the participant seeking relief as to his individual account and for the plan. So individual just means it's just as to his account. It's like one chapter of a book where you have all these chapters together that form the entire plan, but each person has their own defined chapter and you can look at any one. So individual just means we're focused on this particular plaintiff before the court. All right. Thank you very much, both sides, for your helpful arguments this morning. The matter is submitted.
judges: NGUYEN, FORREST, VANDYKE